STATE OF NORTH CAROLINA
v.
MARCOS CRUZ
No. COA09-373
Court of Appeals of North Carolina
Filed December 22, 2009
This case not for publication
Attorney General Roy Cooper, by Assistant Attorney General Newton G. Pritchett, Jr., for the State.
Richard E. Jester, for defendant-appellant.
CALABRIA, Judge.
Marcos Cruz ("defendant") appeals from a judgment entered upon jury verdicts finding him guilty of trafficking in cocaine by possession and transportation and conspiracy to traffic in cocaine. We find no error.
Sergeant Rick Armstrong ("Sergeant Armstrong") of the Raleigh Police Department ("the RPD") was working in the Drugs and Vice Unit ("the drug unit") in 2006 when he arrested Rogelio Vitales ("Vitales") on trafficking charges. Thereafter, Vitales became an undercover informant for the drug unit, creating relationships and setting up drug deals in order for the RPD to apprehend drug dealers. Vitales began setting up deals for small amounts of cocaine from Isidro Hernandez ("Hernandez"). After several small deals with Hernandez, Vitales asked Hernandez for a full ounce of cocaine. Hernandez said he couldn't get that amount, but he knew someone who could, and gave the name Jose Arellano ("Arellano").
On 28 July 2007, Vitales purchased an ounce of cocaine from Arellano in a parking lot while Hernandez was present. Arellano told Vitales he could get more for him at a later time. Arellano entered a Chevy Malibu ("the Malibu") and drove away.
On 24 August 2007, Vitales met with Hernandez and Arellano, who told Vitales, "Tomorrow, we can get you a kilo of cocaine for $22,500." Detectives from the drug unit conducted surveillance of this initial meeting. The exchange was set to take place the following day at 7:00 p.m. in the parking lot of the apartment complex where Hernandez lived. The police gave Vitales fake money in the amount of $22,500 and set up surveillance of the parking lot.
Detectives Jeff Marbrey ("Detective Marbrey") and Eric Emser ("Detective Emser")(collectively "the detectives") were stationed in a vehicle with tinted windows about three parking spaces away from where the transaction was to take place so that they could observe it directly at close range. Sergeant Armstrong and a S.W.A.T. team were stationed in a van on the other side of the parking lot waiting for a signal from Vitales before responding. Sergeant Armstrong was in radio contact with the detectives.
Vitales and Hernandez were waiting on the sidewalk next to the parking lot near Hernandez's pickup truck. After twenty or thirty minutes the surveillance team saw the Malibu pull into the parking lot and into a parking space directly in front of where Hernandez and Vitales were standing. Arellano, the driver, and defendant, the passenger, both got out of the Malibu. Defendant was holding a clear cellophane bag, and he handed the bag to Hernandez. Arellano and defendant remained by Hernandez' pickup truck while Hernandez and Vitales went over to Vitales' car. Hernandez placed the bag in Vitales' car, and Vitales gave the signal to indicate that the cocaine had been delivered. Sergeant Armstrong and the S.W.A.T. team moved in and arrested the three suspects and Vitales. Hernandez tried to grab the bag and throw it, but one of the officers took it and handed it to Sergeant Armstrong. The cocaine was visible through the packaging. The cocaine was later determined to weigh 1,071.8 grams.
The police officers had not seen defendant previously and were not expecting anyone else at the site of the exchange, but stated that it is common practice when dealing with an amount as large as a kilo that someone will act as the middleman and someone else will show up with it.
Hernandez testified that he had pled guilty to trafficking in cocaine and conspiracy to traffic in cocaine as a result of the transaction on 25 August 2007. He stated that he put the person he knew as "Mr. Chewy" in contact with Arellano on 24 August 2007 for the purpose of making a deal to buy cocaine. He had previously introduced Mr. Chewy to Arellano and been present when Mr. Chewy bought an ounce of cocaine from Arellano. Hernandez testified that on 25 August 2007, Arellano and defendant brought drugs to Mr. Chewy, and that defendant put the drugs in the truck. He did not know defendant and had not seen him prior to these events.
On 9 October 2007, defendant was indicted for the offenses of conspiracy to traffic cocaine, trafficking cocaine by transportation, and trafficking cocaine by possession. Defendant was tried in Wake County Superior Court on 15 and 16 October 2008. At the close of the State's evidence, defendant moved to dismiss the charges for insufficient evidence. The trial court denied the motion. Defendant did not present any evidence.
The jury returned verdicts finding defendant guilty of all three charged offenses. Defendant was sentenced to a minimum of 175 months to a maximum of 219 months in the North Carolina Department of Correction. Defendant appeals.
Defendant argues that the trial court erred in denying his motion to dismiss each of the charges. A defendant's motion to dismiss should be denied if there is substantial evidence: (1) of each essential element of the offense charged and (2) of defendant's being the perpetrator of the offense. State v. Scott, 356 N.C. 591, 595, 573 S.E.2d 866, 868 (2002) (citation omitted). Substantial evidence is that amount of relevant evidence necessary to persuade a rational juror to accept a conclusion. Id. at 597, 573 S.E.2d at 869 (citation omitted). This evidence may be direct or circumstantial. State v. Jenkins, 167 N.C. App. 696, 699, 606 S.E.2d 430, 432 (2005). Upon review in this Court, we must view the evidence in the light most favorable to the State, giving it the benefit of all reasonable inferences. Scott, 356 N.C. at 596, 573 S.E.2d at 869. Contradictions and discrepancies do not warrant dismissal, but rather are for the jury to resolve. Id.
Defendant first argues that the trial court erred by denying his motion to dismiss the charge of conspiracy to traffic in cocaine. "A criminal conspiracy is an agreement, express or implied, between two or more persons to do an unlawful act or to do a lawful act by unlawful means." State v. Clark, 137 N.C. App. 90, 95, 527 S.E.2d 319, 322 (2000) (citation omitted). In order to prove conspiracy,
the State need not prove an express agreement; evidence tending to show a mutual, implied understanding will suffice. Nor is it necessary that the unlawful act be completed. A conspiracy may be shown by circumstantial evidence, or by a defendant's behavior. Conspiracy may also be inferred from the conduct of the other parties to the conspiracy. [P]roof of a conspiracy [is generally] established by a number of indefinite acts, each of which, standing alone, might have little weight, but, taken collectively, they point unerringly to the existence of a conspiracy.
Jenkins, 167 N.C. App. at 699-700, 606 S.E.2d at 432-33 (internal quotations and citations omitted).
In the instant case, the "unlawful act" to which defendant was alleged to have conspired is trafficking in cocaine by possession of more than 400 grams of cocaine. N.C. Gen. Stat. § 909-5(h)(3)(c) (2007). Thus, to find defendant guilty of conspiracy to traffic in cocaine, the State must prove that defendant entered into an agreement to traffic in cocaine by possessing more than 400 grams of cocaine.
The amount of the cocaine is not in dispute; the bag seized from the drug transaction was determined to contain 1,071.8 grams of cocaine. Rather, defendant argues the court should have dismissed the conspiracy charge because insufficient evidence was presented to show that he made an agreement with Arellano to traffic in cocaine.
The evidence shows that Arellano agreed to provide a kilo of cocaine to Vitales in exchange for $22,500. Hernandez was present at both the initial meeting and the subsequent transaction. At the agreed time and place, Arellano drove up with defendant as a passenger for the meeting with Vitales and Hernandez. Defendant was actually in possession of the bag containing the cocaine when he stepped out of the vehicle, and when defendant exited the vehicle, he moved to Hernandez and handed Hernandez the bag. Defendant's presence and involvement, particularly his possession of the bag and physical handoff to Hernandez, indicate an understanding with Arellano to provide the cocaine to Vitales and Hernandez. This evidence, while not evidence of an express agreement, is sufficient to allow a reasonable inference that defendant conspired with Arellano to traffic in cocaine by possession. This assignment of error is overruled.
Defendant argues that the trial court erred by denying his motion to dismiss the two trafficking charges. Pursuant to N.C. Gen. Stat. § 90-95(h)(3), "[a]ny person who sells, manufactures, delivers, transports, or possesses 28 grams or more of cocaine . .. shall be guilty of a felony, which felony shall be known as `trafficking in cocaine.'" N.C. Gen. Stat. § 90-95(h)(3) (2007). If the amount trafficked is more than 400 grams, the offender "shall be punished as a Class D felon and shall be sentenced to a minimum term of 175 months and a maximum term of 219 months." N.C. Gen. Stat. § 90-95(h)(3)(c) (2007). To prove the offenses of trafficking in cocaine by possession and trafficking in cocaine by transportation, the State must show that "the substance was knowingly possessed and transported." State v. Baldwin, 161 N.C. App. 382, 391, 588 S.E.2d 497, 504 (2003) (citation omitted).
With regard to trafficking by transportation, the element of transportation is shown by "any real carrying about or movement from one place to another." State v. Outlaw, 96 N.C. App. 192, 197, 385 S.E.2d 165, 168 (1989)(citation omitted). "[E]ven a very slight movement may be `real' or `substantial' enough to constitute `transportation' depending upon the purpose of the movement and the characteristics of the areas from which and to which the contraband is moved." State v. McRae, 110 N.C. App. 643, 646, 430 S.E.2d 434, 436 (1993).
In the instant case, we find sufficient evidence was presented to support trafficking by possession where evidence clearly demonstrated that defendant was holding the bag of drugs as he exited Arellano's vehicle, the bag was encased in clear packaging, he carried the bag in his hand to Hernandez, and the bag contained more than 400 grams of cocaine. The evidence that defendant exited the vehicle with the bag of cocaine, approached Hernandez, and handed Hernandez the bag is sufficient to support a reasonable inference that defendant moved the cocaine from one place to another to such a degree as to constitute "transportation" for purposes of the offense of trafficking cocaine by transportation. Even the small movement from inside the car to outside the car and toward Hernandez is enough to support a conclusion by a rational juror that defendant committed the offense of trafficking by transportation. Thus, the State presented substantial evidence of each element required, and the trial court did not err in denying defendant's motion to dismiss the charges of trafficking by possession and trafficking by transportation. These assignments of error are overruled.
Defendant received a fair trial, free from error.
No error.
Judges WYNN and STROUD concur.
Report per Rule 30(e).