STATE OF NORTH CAROLINA,
v.
ALLEN DOUGLAS MAY, Defendant-Appellant.
No. COA09-175.
Court of Appeals of North Carolina.
Filed February 2, 2010.
This case not for publication
Attorney General Roy Cooper, by Assistant Attorney General Ted R. Williams, for the State.
Mercedes O. Chut for defendant.
ELMORE, Judge.
On 13 August 2007, Jim Dugan participated in an arranged drug buy coordinated by Detective Jonathan Kuhn of the Washington Police Department's narcotics division. Detective Kuhn equipped Dugan with a camera and recording device, and Dugan went to the residence of Allen Douglas May (defendant) to purchase pills and cocaine, Dugan having told Detective Kuhn that he had made such purchases from defendant in the past. Detective Kuhn gave Dugan $100.00 to make the purchase.
Per the video recording presented at trial, Dugan told defendant he wanted $60.00 worth of "pills." Defendant left and returned ten minutes later, at which point Dugan gave defendant the $60.00 and defendant gave Dugan pills that were later determined to be oxycodone hydrochloride. Dugan then told defendant he wanted crack cocaine and gave defendant $40.00; again, defendant left the residence, was gone for approximately thirty minutes, and then returned, at which point the money and drugs were exchanged between the parties. Dugan then returned to Detective Kuhn with the drugs.
Defendant was convicted by a jury of: (1) two counts of possession with intent to sell or deliver cocaine, (2) one count of sale and delivery of cocaine, (3) two counts of trafficking in opium of more than 4 grams but less than 14 grams, and (4) one count of sale and delivery of a counterfeit controlled substance.[1] He was sentenced to 179 to 216 months' imprisonment, with an additional suspended sentence of 36 months' supervised probation. Defendant now appeals.

I.
Defendant argues that the trial court erred in denying his motion to dismiss the charges of (1) trafficking in opium, (2) possession with intent to sell and deliver cocaine, and (3) possession of cocaine; specifically, he argues that the State supplied insufficient evidence to support the charges. We disagree.
[A d]efendant's motion to dismiss must be considered in light of all the evidence introduced by the State as well as that introduced by defendant. Thus, the question presented is whether upon consideration of all the evidence, whether competent or incompetent, in the light most favorable to the State, there is substantial evidence that the crime charged in the bill of indictment was committed and that defendant was a perpetrator of that crime.
State v. Perry, 316 N.C. 87, 95, 340 S.E.2d 450, 456 (1986) (citations omitted). "Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion." State v. Vick, 341 N.C. 569, 583-84, 461 S.E.2d 655, 663 (1995).

A.
We turn first to defendant's two arguments that the evidence was insufficient to support the two counts of trafficking in opium or heroin. We find both arguments to be without merit.
The statute under which defendant was convicted states:
Any person who sells, manufactures, delivers, transports, or possesses four grams or more of opium or opiate, or any salt, compound, derivative, or preparation of opium or opiate (except apomorphine, nalbuphine, analoxone and naltrexone and their respective salts), including heroin, or any mixture containing such substance, shall be guilty of a felony which felony shall be known as "trafficking in opium or heroin" and if the quantity of such controlled substance or mixture involved:
a. Is four grams or more, but less than 14 grams, such person shall be punished as a Class F felon and shall be sentenced to a minimum term of 70 months and a maximum term of 84 months in the State's prison and shall be fined not less than fifty thousand dollars ($50,000)[.]
N.C. Gen. Stat. § 90-95(h)(4) (2007) (emphasis supplied).
Defendant's first argument is rooted in the fact that the State's forensic chemist testified that the tablets in evidence weighed 4.09 grams each but were composed of both oxycodone hydrochloride, an opiate, plus acetaminophen. Defendant argues that, because the chemist did not testify as to the relative proportions of the substances, there was no evidence that the tablets contained four or more grams of oxycodone hydrochloride itself. This argument is without merit.
Defendant points to no case that holds or even suggests that the only substances covered by this statute are those that are one hundred percent pure opium or opiates. Indeed, as the italicized portions of the statute above clearly state, the statute is intended to cover both the named substances as well as any mixture containing those substances. See State v. Jones, 85 N.C. App. 56, 68, 354 S.E.2d 251, 258 (1987) (interpreting N.C. Gen. Stat. § 909-5(h)(4)(c): "Clearly, the legislature's use of the word `mixture' establishes that the total weight of the dosage units of [opiate] is sufficient basis to charge a suspect with trafficking."). The plain language of the statute clearly negates defendant's argument and, as such, this argument is overruled.
We note here that defendant's final argument  that the trial court erred in imposing the $50,000.00 fine for the possession of more than 4 but less than 14 grams of opiates  is based on this same theory of measuring the pills' weight. See N.C. Gen. Stat. § 90-95(h)(4) (2007) (imposing fine). Since we reject defendant's argument on that point here and decline to reverse defendant's conviction under N.C. Gen. Stat. § 90-95(h)(4), this argument is moot.

B.
Defendant next argues that the State did not present sufficient evidence that he transported the drugs in question. The North Carolina Controlled Substances Act, of which the statute above is a part, does not define the term "transport," but this Court established in State v. Outlaw that the "transport" requirement is fulfilled by "`any real carrying about or movement from one place to another.'" 96 N.C. App. 192, 197, 385 S.E.2d 165, 168 (1989) (quoting Cunard Steamship Company v. Mellon, 262 U.S. 100, 122, 67 L. Ed. 894, 901 (1922)).
Defendant alleges that the jury in this case would have had to make an inference that he transported the drugs from one place to another  an inference that, defendant contends, this Court expressly found insufficient to overcome a motion to dismiss in State v. Harrington, 171 N.C. App. 17, 614 S.E.2d 337 (2005). There, the two defendants admitted to storing marijuana at their house and then selling it from their apartment five miles away. Id. at 26, 614 S.E.2d at 345. As defendant states, the Court found that this implication alone was not enough to survive a motion to dismiss. Id. However, defendant incorrectly characterizes the Court's reasoning behind that conclusion. The Court did not so hold based, as defendant suggests, on the proposition that a jury is not allowed to draw an inference of transportation from the facts presented; rather, the Court stated that insufficient evidence was presented of the defendants themselves being involved: "[N]o one testified to observing [the defendants] personally or actively moving or carrying any controlled substance. There was therefore insufficient evidence to support the charge of trafficking by transportation . . . ." Id. at 27, 614 S.E.2d at 346. The Court noted that "[o]ur Courts have previously found sufficient evidence of transportation of a controlled substance only when a defendant can be shown to have actively moved or carried the controlled substance." Id. at 26, 614 S.E.2d at 346 (emphasis supplied). The evidence was insufficient in Harrington, then, not because the jury had to infer the movement of the controlled substance, but because the jury had to infer the movement of the controlled substance by the defendants. Given that defendant does not argue to this Court that someone else transported the pills to him, the issue in Harrington is not the issue here, and thus defendant's reliance on this case is misplaced.
As to defendant's general contention that insufficient evidence was presented to support an inference of transporting in this case, we look to the evidence presented in the light most favorable to the State: On 13 August 2007, Dugan met defendant at defendant's residence with money to purchase pills and cocaine. Defendant left the residence and returned ten minutes later and gave the pills to Dugan, then left again and returned after thirty minutes to give the crack cocaine to Dugan in exchange for cash. From these circumstances, it was reasonable for the jury to infer that defendant went to another location, obtained the drugs, and then brought them back to his residence to sell to Dugan. This Court has upheld convictions based on similar evidence. See, e.g., State v. Greenidge, 102 N.C. App. 447, 450, 402 S.E.2d 639, 641 (1991) (upholding trafficking conviction where the defendant tossed drugs from his house into the backyard to avoid detection by police; "where a person moves drugs from a dwelling and to a point beyond its curtilage, such movement is sufficient to constitute real and substantial movement"); State v. McRae, 110 N.C. App. 643, 646, 430 S.E.2d 434, 436 (1993) (upholding trafficking conviction where the defendant took drugs from his house to his car and then drove away; "a very slight movement may be `real' or `substantial' enough to constitute `transportation' depending upon the purpose of the movement and the characteristics of the areas from which and to which the contraband is moved"). As such, the trial court did not err in denying defendant's motion to dismiss, and defendant's argument is overruled.

II.
Defendant's other argument as to the denial of his motion to dismiss relates to his conviction for two counts of possession with intent to sell or deliver cocaine and one count of sale and delivery of cocaine. Defendant's argument consists solely of statements that the only evidence of his having performed the sale in question is the testimony of Dugan, whom defendant characterizes as an untrustworthy source, and the video and audio recordings, which defendant characterizes as faulty. This argument is without merit.
First, Dugan was not the only witness who provided evidence of the transaction; Detective Kuhn, the police officer who coordinated the transaction between the two men, testified at length regarding the transaction. Second, the video and audio of the transaction were in fact perfectly functional; the recording was played at trial during Detective Kuhn's testimony, and Detective Kuhn narrated and explained various portions of the recorded transaction. Taking the evidence in the light most favorable to the State, as we must, we find that the State presented sufficient evidence to support these charges, and thus overrule defendant's argument on this point.
The trial court properly denied defendant's motion to dismiss the charges at issue. As such, we find no error.
No error.
Judges WYNN and CALABRIA concur.
Report per Rule 30(e).
NOTES
[1] This final charge relates to a second coordinated buy made by Dugan from defendant on the following day, 14 August 2007. Defendant's appeal does not concern this charge.